UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 07-230-GWU

PATRICIA BLANKENSHIP, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

>    Step 4.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.
>
> 4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months?  If yes, proceed to Step 5.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).
>
> 5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.  <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).
>
> 6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).
>
> 7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.

In such cases, the agency may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Patricia Blankenship, was found by an Administrative Law Judge (ALJ) to have "severe" impairments due to chronic back and neck pain and coronary artery disease.  (Tr. 17).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to return to her past relevant work, and therefore was not entitled to benefits.  (Tr. 22-7).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were capable of "medium" level exertion, and also had the following non-exertional restrictions.  (Tr. 591).  She: (1) could never climb ladders, ropes, or scaffolds; (2) could occasionally crawl or climb ramps and stairs; (3) could frequently stoop, crouch, and reach overhead; and (4) needed to avoid concentrated exposure to

extreme cold and vibrations. (Tr. 591-2). The VE responded that such a person could perform the plaintiff's past work, which had involved being a sales clerk/stocker and as a cleaner. (Id.).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence. The court concludes that they are not, and a remand will be required for further consideration.

The only opinion regarding functional restrictions from a treating source was made by Dr. Sai T. Gutti, a specialist in pain management, who treated the plaintiff beginning in July, 2004 for neck and lower back pain, cervical pain, and sacroiliac joint tenderness. His initial examination showed tenderness, spasms, and swelling in the cervical spine, tenderness and spasms in the lumbar spine, a restricted range of motion of the back, and decreased sensation in both lower extremities. (Tr. 378). Dr. Gutti prescribed medication including non-steroidal non-inflammatory agents and the narcotic pain reliever Darvocet (Tr. 371), which was later changed to Lortab (Tr. 369). This medication was continued throughout the period of treatment notes submitted, which continued through April, 2006. (Tr. 541-7). The plaintiff was also given numerous epidural steroidal injections with some relief. (Tr. 359-66, 542-3).

Dr. Gutti submitted a functional capacity assessment in July, 2006, restricting the plaintiff to less than ten pounds lifting both frequently and occasionally, standing and walking less than two hours in an eight-hour day, sitting about six hours in an

eight-hour day, having limitations on pushing and pulling in both the upper and lower extremities, never performing any postural activities except for occasional balancing, having a limited ability to reach in all directions including overhead, and a limited ability to work around vibrations.  (Tr. 562-5).  He cited both MRI and EMG findings in support of his restrictions.  An MRI of the cervical spine in May, 2004 had shown a bulging disc at C4-5, and a thoracic spine MRI the same date showed a minimal simple herniated disc at T4-5.  (Tr. 151).  There do not appear to be any EMG results in the court transcript; however, Dr. Gutti indicated that the test showed right mid-cervical radiculopathy and right ulnar neuritis.  (Tr. 563).

       The ALJ rejected Dr. Gutti's restrictions on several grounds.  First, the ALJ felt that the physician's treatment notes were inconsistent, citing comments that the plaintiff had "periods of exacerbation" and "periods of aggravation," and that she was "stable with treatment."  (Tr. 25).  While there are indications that the treatment was helping, and that the plaintiff was "stable" with medication, this does not establish that her base line of functioning was higher than asserted by Dr. Gutti.  The ALJ also felt that the MRI results were inconsistent with the physician's restrictions, but no physician reached this conclusion, and the ALJ did not seek an

opinion from a medical reviewer with access to the entire record.  Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994).[1]

The only previous medical examiner to express an opinion regarding functional restrictions, Dr. Stephen Nutter, had opined in September, 2004 that the plaintiff had diagnoses of acute and chronic cervical and thoracic strain with chronic lumbosacral strain, knee pain, chest pain, headaches, and hypertension. (Tr. 165). While he did not list specific physical restrictions, he stated that the plaintiff's ability to perform bending, walking, sitting, lifting, carrying heavy objects, climbing, crawling, and squatting would be at least moderately impaired.  (Tr. 166).  Given that the plaintiff's past relevant work as a custodian and a sales clerk apparently involved a considerable amount of walking and standing as well as at least some squatting and bending, it is dubious whether Dr. Nutter's restrictions are consistent with her past relevant jobs.[2]  Only the functional capacity assessment of State Agency Physician Allen Dawson generally supports the ALJ's functional capacity findings (although, as the plaintiff notes, Dr. Dawson also placed restrictions on

---

[1] The Sixth Circuit has recently noted that even if a treating physician's opinion is not entitled to controlling weight "in all cases, there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding." Rogers v. Commissioner of Social Security, 486 F.3d 234, 240 (6th Cir. 2007).

[2] The VE testified that the plaintiff's job as a receptionist was "temporary and part-time." (Tr. 591).

pushing and pulling in both legs), and Dr. Dawson did not have access to the entire record and did not have the opportunity to express his reasons for disagreeing with Dr. Gutti. (Tr. 183-9). Accordingly, a remand will be required, during which the ALJ should, at a minimum, obtain an opinion from a medical expert who reviews all of the evidence.

The ALJ did not find that the plaintiff had a "severe" mental impairment. This conclusion was consistent with the opinions of state agency psychologists (Tr. 167, 179, 191). The only mental status examiner was Psychologist Stuart Cooke, who examined the plaintiff in August, 2004 and recorded an impression of "social anxiety" and concluded that the plaintiff would have a poor ability to relate to the public and would have a poor ability to tolerate the stress and pressures associated with day-to-day work activities if she had to deal with the public, although her ability in the latter area would be good if she could work by herself. (Tr. 159). One of the state agency psychologists commented that the plaintiff's allegations of not being able to work around people were not totally credible because she had worked until April, 2004 and there was no evidence that she could not deal with people. (Tr. 179). However, there was a report from a third party, the plaintiff's aunt, stating that she spent most of her time alone in her room, although she had previously been an outgoing person. (Tr. 87-8). Therefore, there was some evidence supporting the plaintiff's position which could have been considered under 20 C.F.R. §

404.1513(d)(4). Moreover, the ALJ appeared to place undue weight on the plaintiff's failure to receive formal mental health treatment except on an episodic basis. (Tr. 20). The Sixth Circuit has noted that it is poor practice to chastise an individual with a mental impairment for lack of diligence in seeking treatment. <u>Blankenship v. Bowen</u>, 874 F.2d 1116, 1124 (6th Cir. 1989).

The decision will be remanded for further consideration.

This the 13th day of August, 2008.

**Signed By:**

<u>**G. Wix Unthank**</u>

**United States Senior Judge**